# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY REAVES, : | CIVIL ACTION NO. 1:09-CV-2549 |
| Plaintiff : | |
| : | (Judge Conner) |
| v. : | |
| : | |
| PENNSYLVANIA STATE POLICE, : | |
| Defendant : | |

## MEMORANDUM

Presently before the court is defendant Pennsylvania State Police's ("PSP") motion for summary judgment (Doc. 19) and the magistrate judge's report (Doc. 39) recommending that it be denied. PSP filed objections to the magistrate judge's report and recommendation ("R&R"), and the parties fully briefed the issues raised by PSP's objections. (See Docs. 44, 47, 50). For the reasons set forth below, the court will adopt the R&R in part and reject it in part.

### I. Factual Background & Procedural History[1]

Plaintiff Tony Reaves ("Reaves") was a full-time trooper for PSP on probationary status at the Avondale barracks. He is an African-American. Reaves's probationary status was extended in March, 2007. In August and September, 2007, Corporal Steven Ranck ("Cpl. Ranck") prepared a supplemental General Investigation ("GI") report in review of Reaves's probationary trooper status. The report noted a number of negative

---

[1] The Magistrate Judge's report recites the facts of this case in greater detail. The factual background set forth in this opinion derives from the Magistrate Judge's recitation of facts, familiarity with which is presumed.

incidents involving Reaves, including three different traffic stops.[2] Although a majority of Reaves's supervisors recommended retention, Cpl. Ranck recommended that Reaves not be retained. Upon Cpl. Ranck's recommendation, Captain Jack Laufer ("Capt. Laufer") made the decision to terminate plaintiff. The Probationary Trooper Administrative Review Panel agreed with the determination to dismiss plaintiff. Reaves was officially terminated on October 4, 2007.

Reaves spoke with Cpl. Ranck in July, 2007, about his belief that he was treated differently than others. Additionally, he contacted the PSP Equal Employment Opportunity ("EEO") office on numerous occasions from March, 2007, after his probation was extended, until his dismissal in October, 2007. Reaves also spoke several times with his station commander, Lieutenant Shelton Sneed ("Lt. Sneed"), about his perceived differential treatment. Sometime in September 2007, Reaves sent a complaint letter to Lt. Sneed outlining a number of issues and concerns regarding his perceived differential treatment.

---

[2] The report noted a traffic stop which took place on July 21, 2007, where Reaves was pulled over in his personal vehicle for passing a state police car on the right. It also noted that Reaves had a disagreement with Sgt. Kissinger, an 18 year department veteran, as to whether an individual could be arrested for leaving notes on a car requesting the owners not to park in front of his property. Finally, the report included information that Reaves had an increase in errors and omissions in his reporting, that Reaves was named as a suspect in the theft of a motorcycle ramp, that Reaves was involved in another traffic stop for passing a state police car on the right, and that Reaves had been pulled over by the New Jersey State Police for speeding on March 12, 2007.

Reaves filed the instant suit on December 28, 2009, alleging violations of Title VII of the Civil Rights Act of 1964. (Doc. 1). PSP filed the instant motion for summary judgment on February 28, 2011. (See Docs. 19-21). The court referred PSP's summary judgment motion to the Magistrate Judge, (see Doc. 38), who recommended denying the motion. PSP filed objections to the R&R on April 5, 2012. (Doc. 44). The parties fully briefed the issues raised in PSP's objections to the R&R, and the matter is now ripe for review.

## II. Standard of Review

### A. Standard of Review for a Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In reviewing a motion for summary judgment under Title VII, which relies upon indirect evidence, the Third Circuit applies the three-step test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination or retaliation. Id. at 802. Second, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse action taken. Id. Third, the plaintiff must show that the defendant's proffered reasons are mere pretext. Id.

### B. Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). Local Rule 72.3 requires "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."

## III. Discussion

PSP objects to the R&R insofar as it concludes that PSP is not entitled to summary judgment on Reaves's Title VII discrimination and retaliation claims  PSP raises four specific objections: (1) the Magistrate Judge incorrectly found a dispute of material fact regarding whether comparators were sufficiently similarly situated to Reaves; (2) the Magistrate Judge erred in finding that Reaves established pretext; (3) the Magistrate Judge incorrectly concluded that Reaves engaged in a protected activity; and

4

(4) the Magistrate Judge erred in not addressing defendant's causal connection argument. The court will address each objection in turn.

### A. Title VII Discrimination Claim

In order to establish a *prima facie* case of employment discrimination, Reaves must show (1) his membership in a protected class; (2) his qualification for his position; (3) that he suffered an adverse employment action; and (4) that the employer took the adverse action against him under circumstances raising an inference of discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802; Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999). Here, only the fourth element is at issue. A plaintiff can establish an inference of discrimination where he or she was treated differently than similarly situated employees outside his or her protected class. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

PSP objects to the Magistrate Judge's finding that there is a dispute of fact regarding whether there are PSP employees sufficiently similarly situated that their differential treatment would give rise to an inference of discrimination. As further discussed by the Magistrate Judge, different courts have varying definitions of the term "similarly situated." (See Doc. 39, at 17-19). "While 'similarly situated' does not mean identically situated, the [comparators] must nevertheless be similar in 'all relevant respects.'" Opsatnik v. Norfolk S. Corp., 335 Fed. Appx. 220, 222-23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). It often involves a showing that "the individuals with whom the plaintiff seeks to compare [his] treatment

must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 604 (M.D. Pa. 2002) (quoting Morris v. G.E. Financial Assurance Holdings, No. 00-3849, 2001 WL 1558039, at *6-*8 (E.D. Pa. Dec. 3, 2001) (citations and internal quotation marks omitted)).

Reaves offers the following PSP troopers as similarly situated, all of whom had various traffic altercations: Chris Winesburg, Vicki Spencer, Curtis Confer, Gary Wilson, Donald Neisner, David Sawicky, Michael Snyder, Norman Strauss, Matt Hudak, Jonathan Burnham, Frank Pawlowski, Jeffrey Miller, Jeffrey Dillig, Paul McManamon, Heather Seifrit. Some of these alleged comparators can be dismissed with little

comment as they are obviously not similarly situated.[3] The following state troopers are left as potential comparators: Winesburg, Spencer, Seifrit, Neisner, Snyder, Hudak, and Burnham.

For the remaining comparators, Reaves simply denies many of Defendant's statements of undisputed material fact without citing or producing any affirmative evidence outside the allegations contained in his complaint. (See Doc. 29 ¶ ¶ 142, 143,

---

[3] For example, Frank Pawlowski and Jeffrey Miller were pulled over for speeding but were not disciplined; however, at the time they were the Commissioner and Deputy Commissioner of PSP - not probationary troopers. (See Doc. 20, ¶ 156; Doc. 29, ¶ 156).

Troopers Confer, Sawicky, Strauss, and Wilson were assigned to the Embreeville station, not Avondale, and therefore had a different immediate supervisor and station commander. (See Doc. 29-22, at 2). Additionally, as discussed *infra*, Reaves does not present any actual evidence to support his claim that Confer, Sawicky, and Strauss were similarly situated, relying on the argument that PSP is still in possession of their probationary files. Hence, Reaves has not met his burden with respect to these three potential comparators.

Moreover, Reaves presents Sawicky as a potential comparator because Sawicky failed the psychological exam multiple times while he was in the Academy, but was never terminated. (See Doc. 20, ¶ 149; Doc. 29, ¶ 149). Reaves was terminated for the proffered reasons of attitudinal issues and traffic violations - not for failing a psychological exam. Thus, Sawicky is not similarly situated to Reaves.

According to Reaves's complaint, Jeffrey Dillig and Paul McManamon were both dismissed but were permitted to resign – presumably to soften their records for future employment opportunities – and thus treated more favorably. (See Doc. 11, ¶ 107). Jeffrey Dillig was not a probationary trooper at the time and he was terminated for steroid use, not for poor performance issues. (See Doc. 21, Ex. 1, at 110). As for Paul McManamon, PSP admits that he may be considered a similarly situated employee because he was terminated due to alleged performance issues. (Doc. 26, at 17). However, as discussed *infra*, Reaves fails to support his allegations regarding Trooper McManamon with record evidence and simply states that PSP did not produce Trooper McManamon's probationary trooper file. Thus, it is impossible for this court to know whether Trooper McManamon was permitted to resign in lieu of dismissal as alleged in the complaint, and therefore was treated differently than Reaves.

7

144, 145, 150, 152, 153). Federal Rule of Civil Procedure 56(c)(1) states that the non-movant must establish a genuine dispute of material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited [by the movant] do not establish the absence or presence of a genuine dispute." In doing so, a non-moving party "may not simply sit back and rest on the allegations in its complaint." <u>Corneal v. Jackson Township</u>, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), <u>aff'd</u>, 94 Fed. Appx. 76 (3d Cir. 2004). Local Rule 56.1 states that any material facts set forth by the movant "will be deemed to be admitted unless controverted" by the non-movant.

Reaves denies many of PSP's statements of fact with the bare explanation that "defendant did not produce all of the requested and relevant probationary trooper files, and the evidence remains in defendant PSP's possession." (<u>See</u> Doc. 29 ¶¶ 142 n.12, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160). Specifically, Reaves explains that:

> [i]n this federal court proceeding, Plaintiff Requests for Production of Documents also asked for personnel data specifically relating to comparators, including probationary employment records. See Exhibit 43, Defendants' Responses to Plaintiff's Requests for Production of Documents No. 4; see also Exhibit 46. Defendant refused to produce the requested records, eventually produced what it deems "official personnel files" for some comparators and only one "probationary trooper file," namely for Heather Seifrit. However, the Defendant's regulation defines a "personal record" as "any recorded information, regardless of form or characteristics, other than an official record or public record." Exhibit 8, AR 4-1, 1.02.

(Doc. 29, at 71 n.12).

8

Basing a denial of fact on one's failure to obtain discovery is not proper. Reaves did not file an affidavit or declaration stating that he cannot present facts essential to justify his opposition nor did he seek additional time to obtain discovery. See FED. R. CIV. P. 56(d). Additionally, Reaves never filed a motion for an order compelling discovery. See FED. R. CIV. P. 37; FED. R. CIV. P. 34. Reaves also never took the deposition of any of the proposed comparators. "[O]ne who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone without discovery is not enough." AVS Foundation v. Eugene Berry Enter., LLC, No. 11-1084, 2011 WL 6056903, at *3 (W.D. Pa. Dec. 6, 2011) (quoting Robin Const. Co. v. United States, 345 F.2d 610, 614 (3d Cir. 1965).

Thus, to the extent that Reaves fails to refute PSP's assertions of fact with record evidence and merely cites to the pleadings or his own failure to secure discoverable documents, the court will consider PSP's facts to be undisputed for purposes of the motion. See FED. R. CIV. P. 56(e)(2); Local Rule 56.1. This conclusion eliminates an additional proposed comparator, Vicki Spencer, from consideration. The following troopers remain: Winesburg, Seifrit, Neisner, Snyder, Hudak, and Burnham.

In his Local Rule 56.1 statement on the remaining proposed comparators, the only facts which Reaves supports by a citation to the record are as follows: (1) the fact that he made a written complaint to Lt. Sneed in September, 2007, regarding his disparate treatment compared to other similarly situated employees (Doc. 29 ¶¶ 142, 143, 145, 146, 150, 152, 156, 157, 158, 159, 160; Doc. 29, Ex. 13); (2) the fact that most probationary troopers were retained as troopers following their probationary period, (Doc. 29 ¶ 142);

and (3) several allegations regarding Trooper Seifrit. (Doc. 29, ¶ 146). It is unclear what allegation Reaves seeks to undergird with the fact that most probationary troopers were retained following their probationary period. PSP does not dispute this fact. Hence, we are left with two statements: Reaves's complaints to Lt. Sneed naming other employees who have engaged in traffic incidents and the allegations regarding Trooper Seifrit.

Reaves asserts that he submitted a written complaint to Lt. Sneed regarding his disparate treatment. This assertion is actually provided in response to PSP's contention that Reaves does not know whether his proposed comparators notified their supervisors of their commission of traffic violations or their submission to traffic stops. (Doc. 20 ¶ ¶ 142, 143, 145, 146, 150, 152, 156, 157, 158). PSP reasons that if PSP supervisors were not notified of the comparators' traffic incidents, it is presumptively reasonable that PSP did not investigate the incidents further, and therefore the comparators would not be similarly situated. The fact that Reaves complained about the other troopers' traffic incidents to Lt. Sneed is not disputed.[4] However, it is clear that the parties dispute whether, when, and to what extent PSP was actually aware of the proposed comparators's traffic incidents.

Finally, Reaves presents several allegations, with record citations, regarding a potential comparator, Trooper Seifrit. The information regarding Trooper Seifrit's traffic infractions is not disputed. Again, Reaves argues that he informed Lieutenant

---

[4] PSP alleges that Lt. Sneed does not remember receiving this letter and that there is no record of its receipt, but PSP acknowledges it for the purposes of summary judgment only. (Doc. 26, at 38 n.4).

Sneed of Trooper Seifrit's traffic stops, in contradiction of PSP's claim that "neither Corporal Ranck, Lieutenant Sneed, or Captain Laufer were aware of off-duty traffic stops involving Trooper Seifrit." (See Doc. 29, Ex. 13; Doc. 26, at 12; Doc. 20, ¶¶ 156-158).

The court finds that the parties dispute whether and to what extent Lt. Sneed, and therefore PSP, knew of the troopers' traffic incidents. However, this dispute is not material because Reaves fails to show that any of the troopers had similar "attitude, conduct, and deportment issues" like Reaves.[5] Although Reaves engaged in some of the same conduct, traffic incidents, as the other proposed comparators, there is significant undisputed evidence of "differentiating or mitigating circumstances" that distinguishes Reaves's conduct or PSP's treatment of him for it. Ogden, 226 F. Supp. 2d at 603 (quoting Morris v. G.E. Financial Assurance Holdings, No. 00-3849, 2001 WL 1558039, at *6-*8 (E.D. Pa. Dec. 3, 2001) (citations and internal quotation marks omitted)). PSP chronicles a long list of incidents, before and after his probation extension, which reflect poorly on Reaves's conduct as a trooper, beyond simply his record of traffic incidents.

---

[5] Pursuant to Fed. R. Civ. P. 56(e)(2), the court considers PSP's allegations that these Troopers did not have similar "attitude, conduct, and deportment issues," other than traffic incidents, as undisputed. Although Reaves generally denies these allegations, he has provided no record references to support his denial, and he simply alludes to the fact that he was unable to obtain discovery. Reaves mentions his letter to Lt. Sneed, but this is irrelevant because it only discusses these proposed comparators's traffic incidents. (See Doc. 20, ¶ ¶ 159, 160; Doc. 29, ¶¶ 159, 160).

11

(See Doc. 20, ¶ ¶ 26, 27-30, 32, 48-53, 58, 67, 87, 89, 90, 91, 92, 93, 94, 95, 97, 99, 101, 104-110).[6]  As PSP aptly observes,

> [d]espite plaintiff making every attempt to reduce this case to traffic stops . . . that is not how the defendant viewed plaintiff's conduct.  Defendant looked to the totality of the information which showed repeated attitude, conduct and deportment issues, both on-duty and off-duty, which were subpar.

(Doc. 50, at 5).  Without comparable evidence of conduct issues for the other comparators, a jury could not reasonably find that those troopers were similarly situated to Reaves.  Thus, it is irrelevant and immaterial that a jury could potentially find that PSP knew of the proposed comparators's traffic incidents and failed to investigate further.  As a matter of law, Reaves fails to make out a *prima facie* case of racial discrimination, and the court will grant summary judgment in favor of PSP on this claim.  Based upon this determination, the court will not address PSP's pretext objection.

### B.    Title VII Retaliation Claim

In order to establish a *prima facie* case of retaliation under Title VII, Reaves must show that (1) he engaged in protected activity; (2) the employer took adverse action against him, and (3) there was a causal connection between his protected activity and the adverse employment action.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).

---

[6] Reaves does not properly deny any of these statements and so the evidence is undisputed.  Rather, Reaves seeks to re-characterize PSP's statements by providing more context or by making legal arguments that the statements provided do not "support a legitimate, non-discriminatory, or non-retaliatory reason to support Mr. Reaves's termination."  (See, e.g., Doc. 29, ¶ 93).  However, Reaves does not dispute the validity of the underlying documents upon which PSP relies in making these statements.  Thus, there are no genuine disputes of material fact on this matter necessitating a jury trial.

PSP objects to the Magistrate Judge's finding that a reasonable jury could conclude that Reaves engaged in protected activity. The court finds that although the evidence is rather tenuous, when viewed in the light most favorable to Reaves, a reasonable jury could conclude Reaves engaged in protected activity under Title VII and PSP is not entitled to judgment as a matter of law.

A plaintiff is not required to write a formal letter of complaint to his employer or to the Equal Employment Opportunity Commission ("EEOC") in order to engage in protected activity under Title VII. Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (citing Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (explaining that protected activity may also include informal complaints of discrimination, such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges")). However, a general complaint of unfair treatment is not protected conduct under Title VII. Barber, 68 F.3d at 701-702. Instead, a complaint must "explicitly or implicitly allege" that the unfair treatment stemmed from the plaintiff's membership in a protected class.[7] Id.; see also

---

[7] Additionally, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006). However, PSP does not object to the Magistrate Judge's finding that Reaves did possess this reasonable belief. Instead, PSP objects only to the Magistrate Judge's finding that Reaves actually engaged in conduct protected under Title VII. See Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc., 450 F.3d 130, 137 (3d Cir. 2006) ("[i]t is the objective message conveyed, not the subjective intent of the person sending the message, that is determinative.").

Slagle v. Clarion, 435 F.3d 262, 265-68 (3d Cir. 2006). In other words, the "opposition to an illegal employment practice must identify the employer and the practice – if not specifically, at least by context." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).

In the months leading up to Reaves's termination, he made several complaints of unfair treatment to Cpl. Ranck, Lieutenant Martin Henry of the EEO Office ("Lt. Henry"), and Lt. Sneed. "Race" was never explicitly included in any complaint to PSP personnel.[8] However, a jury could reasonably find that Reaves implicitly complained of racial discrimination.

Oftentimes, complaints are too vague to be considered implicit complaints of discrimination. In Barber, the Third Circuit held that the plaintiff's letter to his human resources department stating "I am quite puzzled as to why the position was awarded to a less qualified individual" does not constitute protected conduct for a retaliation claim under the Age Discrimination in Employment Act because it never specifically complained about age discrimination. 68 F.3d at 701-702. Similarly, in Slagle, the Third Circuit held that under the "participation clause" of Title VII, the plaintiff did not engage

---

[8] Although Reaves *argues* that he complained of racial discrimination, (Doc. 30, at 11), in his deposition, Reaves admits that he never explicitly mentioned race as the basis for his complaints. (See Doc. 21-1, at 114, 142). The court also notes that the Magistrate Judge specifically found that Reaves never complained of racial discrimination, (see Doc. 39, at 23), and Reaves did not file an objection to this finding. Although Reaves denies many of PSP's material facts regarding whether he explicitly mentioned race in any of his complaints, Reaves fails to supply record evidence to the contrary. (See Doc. 20 ¶ ¶ 112, 115, 116, 119, 127; Doc. 29. ¶ ¶ 20 112, 115, 116, 119, 127).

14

in protected conduct when he filed a charge with the EEOC alleging "unspecified civil rights violations." 435 F.3d at 265-68.

Nevertheless, there are several cases from our sister courts, similar to this case, where the court found an implicit complaint of discrimination. In <u>Mason v. Transp. Solutions</u>, the Western District of Pennsylvania held that a jury could reasonably infer that plaintiff engaged in protected activity by filing a memorandum with her employer complaining of "repeated discrimination" even though she never mentioned age or gender as the discriminatory motivation. No. 08-902, 2010 WL 2698308, at *27-*28 (W.D. Pa. July 7, 2010). The Eastern District of Pennsylvania held that a complaint of "bias and harassment" "connotes an improper prejudice or favoritism of some sort, though not necessarily regarding a protected class." <u>Jackson v. Lehigh Valley Physicians Group</u>, No. 08-3043, 2010 WL 1630737, at *17 (E.D. Pa. April 20, 2010). That court went on to hold that the plaintiff made an implicit complaint of discrimination based on the use of the words "bias" and "harassment" because the employee "was the only black employee in the Department at the time of her complaint to [the supervisor], which reasonably could give a racial connotation to any complaint of "bias." <u>Id.</u>

The Magistrate Judge determined that Reaves made an implicit complaint based on Lt. Henry's statement acknowledging that plaintiff informed him he is black as well as the letter to Lt. Sneed identifying a racial comment made to plaintiff. (Doc. 39, at 25). Specifically, Reaves contacted the EEO office eleven times in April, July, and August of 2007. During one of their initial conversations, Lt. Henry asked Reaves if he was a minority and Reaves indicated that he was black. (Doc. 29, Ex. 51, p. 39-40). The

Magistrate Judge reasoned that "one would wonder why, given the brevity of this first conversation, Henry would raise the question of whether Reaves is a minority or a member of a protected class if there is not an inference or suggestion that such a classification forms the basis of his alleged differential treatment." (Doc. 39, at 25). The Magistrate Judge also noted that Lt. Henry's deposition testimony, where he testified that Reaves never made a complaint on which Lt. Henry's office could have acted, "is contradicted by the PSP's position statement in response to the EEOC . . . stating that Lt. Henry conducted and completed an investigation into Reaves's alleged discriminatory treatment." (Doc. 39, at 25; Doc. 29-10, ¶ 4).

The fact that Reaves responded to a question from the EEO regarding his race does not, by itself, constitute a complaint of racial discrimination. However, Reaves also sent a letter to Lt. Sneed[9] stating that he felt he was "treated differently than other members of the station" and lists a number of examples of such treatment. (Doc. 29, Ex.

---

[9] As discussed *supra* in Part III.A.1, PSP asserts that Lt. Sneed has no memory of receiving this letter and that no record exists anywhere of its receipt, but PSP acknowledges it for the purposes of summary judgment only. (Doc. 26, at 38 n.4).

16

13).[10] Similar to Mason, Reaves discusses how he related to Cpl. Ranck that he felt he "was being *discriminated* against at the station" and that "[t]he sexual harassment training stated if you feel you are being *discriminated* against to notify your immediate supervisor." (Id. at 5) (emphasis added). Additionally, similar to the employee in Jackson, Reaves was the only black trooper assigned to Troop J at the Avondale

---

[10] Reaves and the Magistrate Judge emphasize that this letter references a traffic stop during which a citizen apparently told Reaves to "go pick cotton," obviously a racist comment. Examined in the broader context of Reaves's letter to Lt. Sneed, however, it is clear that the mention of this offensive comment is not part and parcel of a complaint of racial discrimination. In his letter to Lt. Sneed, Reaves stated:

> I had a traffic stop with a Ronald Scott DAWSON. He was subsequently arrested for D.U.I. During the traffic stop he stated to me to "go pick cotton". [sic] I was still professional and respectful to him throughout the course of him being in my custody. However it is listed on my evaluation that I have attitudinal issues yet it was never addressed to me during my placement in Avondale. The traffic stop was recorded and the MVR was pulled for court, which shows my professionalism throughout his derogatory statement. Incident J02-1122416. This shows that if I don't have an attitude with people I'm arresting why would I have an attitude with people I work with.

(Doc. 29, Ex. 13, p. 3). First, this comment was made by a Pennsylvania citizen, not a member of PSP, and therefore cannot be construed as an explicit or implicit complaint of racial discrimination by Reaves against PSP. Second, this allegation addressed the fact that his evaluations criticized his attitude towards fellow officers and others. Reaves used the example of being told to "go pick cotton," and his response, as an example of his appropriate and professional demeanor on the job. Viewed in this context, a reasonable juror could not find that mention of this traffic stop was an implicit complaint of racial discrimination against PSP.

17

barracks.[11]  (See Doc. 11, ¶ 4; Doc. 13, ¶ 4; Doc. 29, ¶ 4).  Finally, in his letter to Sneed, Reaves specifically compared PSP's treatment of other white troopers, including Troopers Hudak, Wilson, Neisner, Snyder, Burnham, Winesburg, and Seifrit.  See Still v. Cummins Power Sys., No. 07-5235, 2009 WL 57021 (E.D. Pa. Jan. 8, 2009) (reasoning that plaintiff did not engage in protected activity by complaining to his supervisor in an email in part because "nowhere in the e-mail does plaintiff compare himself to similarly situated white employees.").

A jury could reasonably find that Reaves made an implicit complaint of discrimination based on the evidence that Reaves made numerous separate phone calls to the EEO, Lt. Henry knew that Reaves was black, and Reaves complained of "discrimination" and compared himself to other white troopers in a letter to Lt. Sneed, who knew that Reaves was the only black trooper at Avondale.  This activity is not like the "vague" complaint presented in Barber or Slagle.  A jury could reasonably find that Reaves engaged in protected activity under Title VII.  Thus, PSP is not entitled to judgment as a matter of law on Reaves's retaliation claim.

---

[11] Lt. Sneed, the Station Commander, is also black.  (Doc. 13, ¶ 4; Doc. 29, ¶ 4).

**IV.   Conclusion**

The court rejects the Magistrate Judge's R&R insofar as it denies summary judgment to PSP on Reaves's discrimination claim.  The court adopts the Magistrate Judge's R&R insofar as it denies summary judgment to PSP on Reaves's retaliation claim.  Thus, PSP's motion for summary judgment will be granted on Reaves's discrimination claim but denied on Reaves's retaliation claim.  An appropriate order follows.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        October 17, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONY REAVES,** | : | **CIVIL ACTION NO. 1:09-CV-2549** |
| Plaintiff | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **PENNSYLVANIA STATE POLICE**, | : | |
| Defendant | : | |

## **ORDER**

AND NOW, this 17th day of October, 2012, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The report and recommendation (Doc. 39) of Magistrate Judge Methvin are ADOPTED in part and REJECTED in part.

2. PSP's motion for summary judgment (Doc. 19) on Reaves's claim of racial discrimination is GRANTED.

3. PSP's motion for summary judgment (Doc. 19) on Reaves's retaliation claim is DENIED.

4. The Clerk of Court is directed to defer entry of Judgment until the resolution of all claims.

5. A revised scheduling order setting this matter for trial shall issue by future order of the court.

                                                           S/ Christopher C. Conner
                                                        CHRISTOPHER C. CONNER
                                                        United States District Judge