IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONY REAVES,** | : | **CIVIL ACTION NO. 1:09-CV-2549** |
| Plaintiff | : | |
| | : | **(Chief Judge Conner)** |
| v. | : | |
| | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| Defendant | : | |

## **MEMORANDUM**

Presently before the court is defendant Pennsylvania State Police's ("PSP") motion (Doc. 74) for reconsideration of the court's order (Doc. 51) adopting the Magistrate Judge's report and recommendation ("R&R") (Doc. 39) in part and rejecting it in part. The court granted PSP's motion (Doc. 19) for summary judgment on plaintiff Tony Reaves's ("Reaves") Title VII discrimination claim but denied it on Reaves's retaliation claim. PSP seeks the court's reconsideration of whether Reaves has adequately established a causal connection between Reaves's alleged protected activity and the adverse employment action taken against him. For the reasons set forth below, the court will grant PSP's motion (Doc. 74) for reconsideration, and amend its previous order (Doc. 51) to grant PSP's motion (Doc. 19) for summary judgment in its entirety.

I.      **Factual Background & Procedural History**[1]

Reaves is an African American who was employed as a probationary status trooper by the PSP in 2006 and assigned to the Avondale barracks.  (Doc. 20 ¶¶ 1, 4, 19; Doc. 29 ¶¶ 1, 4, 19).  As a result of certain conduct concerns, Reaves's supervisors extended his probationary status in March, 2007.  (Doc. 20 ¶ 61; Doc. 29 ¶ 61).

In July 2007, Reaves conversed with Cpl. Ranck about Reaves's belief that he was being treated differently than others.  (Doc. 20 ¶ 112; Doc. 29 ¶ 112).  Reaves also relayed his concerns of differential treatment to the PSP Equal Employment Opportunity ("EEO") office on several occasions from March, 2007, after his probation was extended, until his dismissal in October, 2007.  (Doc. 20 ¶ 116; Doc. 29 ¶ 116).  Reaves also communicated his perception of differential treatment to his station commander, Lieutenant Shelton Sneed ("Lt. Sneed").  (Doc. 20 ¶¶ 121-124; Doc. 29 ¶¶ 121-124).  Sometime in September 2007, Reaves sent a complaint letter to Lt. Sneed outlining a number of issues relative to differential treatment.  (Doc. 20 ¶¶ 125-127; Doc. 29 ¶¶ 125-127).

---

[1] The court's previous memorandum (Doc. 51) and the Magistrate Judge's report (Doc. 39) recite the facts of this case in greater detail.  The factual background set forth in this opinion derives from these sources, familiarity with which is presumed.  As discussed in the court's previous memorandum (Doc. 51 at 7-10), Reaves denies much of PSP's statement of undisputed material facts, but fails to cite or produce any affirmative evidence or cites to evidence that does not contradict PSP's statements.  Consequently, much of PSP's statement of material facts is deemed admitted.

In August and September, 2007, Corporal Steven Ranck ("Cpl. Ranck") prepared supplemental General Investigation ("GI") reports in review of Reaves's probationary trooper status.  (Doc. 20 ¶¶ 86-103; Doc. 29 ¶¶ 86-103).  The reports noted a number of negative incidents involving Reaves, including three separate traffic stops of Reaves driving his civilian vehicle.  (Id.)  A majority of Reaves's supervisors recommended retention, but Cpl. Ranck recommended that Reaves not be retained.  (Doc. 20 ¶ 103; Doc. 29 ¶ 103).  Upon Cpl. Ranck's recommendation, Captain Jack Laufer ("Capt. Laufer") recommended Reaves's termination.  (Doc. 20 ¶ 104; Doc. 29 ¶ 104).  Major Steven McDaniel ("Major McDaniel"), the Probationary Trooper Review Panel ("PTRP"), and the Probationary Trooper Administrative Review Panel ("PTARP") agreed with the recommendation to dismiss plaintiff.  (Doc. 20 ¶¶ 106-109; Doc. 29 ¶¶ 106-109).  Reaves was officially terminated on October 4, 2007.  (Doc. 20 ¶ 110; Doc. 29 ¶ 110).

Reaves filed the instant suit on December 28, 2009, alleging discrimination and retaliation under  Title VII of the Civil Rights Act of 1964.  (Doc. 1).  PSP filed a motion for summary judgment on February 28, 2011.  (See Docs. 19-21).  The court referred PSP's summary judgment motion to the Magistrate Judge, (see Doc. 38), who recommended denying the motion.  PSP filed objections to the R&R on April 5, 2012.  (Doc. 44).  For Reaves's Title VII discrimination claim, PSP raised two objections: (1) the Magistrate Judge incorrectly found a dispute of material fact regarding whether comparators were sufficiently similarly situated to Reaves; and (2) the Magistrate Judge erred in finding that Reaves established pretext.  For Reaves's Title VII retaliation claim, PSP raised two additional objections: (1) the Magistrate Judge incorrectly concluded

3

that Reaves engaged in a protected activity; and (2) the Magistrate Judge erred in not addressing PSP's causal connection argument.

The court found that PSP was entitled to judgment as a matter of law on Reaves's discrimination claim because a jury could not reasonably find that Reaves was similarly situated to the proposed comparators. (Doc. 51 at 5-12). The court further found that PSP was not entitled to judgment as a matter of law on Reaves's retaliation claim. (Id. at 12-18). The court explained that a jury could reasonably find that Reaves engaged in protected activity. However, the court did not explicitly address whether Reaves could establish a causal connection between his protected activity and the adverse employment action. The court adopted the Magistrate Judge's R&R in part and denied it in part by granting PSP's motion for summary judgment on Reaves's discrimination claim and denying it on Reaves's retaliation claim.

On August 15, 2013, PSP filed the instant motion (Doc. 74) for reconsideration of the court's denial of PSP's motion for summary judgment on Reaves's retaliation claim. Citing the Supreme Court's recent decision in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), PSP asserts that Reaves cannot establish a sufficient causal connection between his alleged protected activity and the adverse employment action taken against him. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

### A. Legal Standard for a Motion for Reconsideration

The denial of a motion for summary judgment is an interlocutory order. Bines v. Kulaylat, 215 F.3d 381, 384 (3d Cir. 2000). The court may reconsider an interlocutory order whenever it is "consonant with justice to do so." Mohammad v. Kelchner, Civ. A. No. 03-1134, 2005 WL 1138468, at *2 (M.D. Pa. Apr. 27, 2005) (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)). An order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); see also Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 393 (D.N.J. 1998) ("a partial summary judgment order is subject to revision or vacation at any time prior to final judgment.").

Rule 59 does not formally apply to motions for reconsideration of an interlocutory order, but courts tend to grant motions for reconsideration "sparingly" and "only upon the grounds traditionally available" under Rule 59(e). A&H Sportwear Co., Inc. v. Victoria's Secret Stores, Inc., Civ. A. No. 94-7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001). Under Rule 59(e), a party seeking reconsideration must typically establish (1) a change in the law; (2) newly discovered evidence; or (3) the need to correct errors of law or fact or to prevent manifest injustice. Mack's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made

5

an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)) *vacated in part on other grounds on reconsideration by* 915 F. Supp. 712 (M.D. Pa. 1996).

For the reasons stated *infra*, the court concludes that Nassar's clarification of the causation standard for retaliation claims, coupled with the lack of thorough analysis relative to the causation prong of Reaves's retaliation claim, provide substantial grounds for the court's reconsideration of PSP's motion for summary judgment.

**B.     Legal Standard for a Motion for Summary Judgment**

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In reviewing a motion for summary judgment under Title VII, which relies upon indirect evidence, the Third Circuit applies the three-step test set forth in McDonnell

6

Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, plaintiff must establish a *prima facie* case of discrimination or retaliation.  Id. at 802.  Second, the burden shifts to the defendant to offer legitimate, nondiscriminatory reasons for the adverse action taken.  Id.  Third, the plaintiff must show that the defendant's proffered reasons are mere pretext.  Id. at 804.

    **C.**    **Legal Standard for a Magistrate Judge's Recommendation**

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report.  Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)).  Local Rule 72.3 requires "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."

**III.**    **Discussion**

To establish a *prima facie* case of retaliation under Title VII, Reaves must show that (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) there was a causal connection between his protected activity and the adverse employment action.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).  In the context of the pending motion, the court must revisit whether Reaves established a sufficient causal connection between his protected activity and the adverse employment action against him.  Pursuant to the Supreme Court's recent ruling, Reaves is required to establish that his protected activity was a "but-for" cause of the employer's adverse action.  Univ. Of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).  Such a

showing "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Id.

The court may consider "a broad array of evidence" to determine whether such a causal link exists for the purposes of a motion for summary judgment.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000).  A short temporal proximity between the protected activity and adverse action that is "unusually suggestive" of a retaliatory motive may suffice to create an inference of causality.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).  When the temporal proximity between the two actions is not "unusually suggestive," the court examines whether "the proffered evidence, looked at as a whole, may suffice to raise the inference."  Farrell, 206 F.3d at 280 (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).  A plaintiff may present evidence of antagonism on behalf of the employer towards the employee, whether the employer provided inconsistent reasons for the adverse action, or any other evidence sufficient to support an inference of retaliation.  Id. at 279-81; LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007).

To analyze the causation element of Reaves's retaliation claim, the court must first define the protected activity and the adverse employment action.  The court has already determined that a jury could reasonably find that Reaves engaged in protected activity

by making implicit complaints[2] of discrimination to Cpl. Ranck, Lieutenant Martin Henry of the EEO Office ("Lt. Henry"), and Lt. Sneed. (See Doc. 51 at 12-18). The parties do not dispute that this activity took place after PSP extended Reaves's probationary status; therefore, it cannot be the "but-for" cause of Reaves's probation extension. See Shaner v. Synthes, 204 F.3d 494, 504-505 (3d Cir. 2000) (finding no causal link where some of employee's negative performance evaluations occurred months prior to the plaintiff's protected activity). Consequently, the only cognizable adverse employment action that may be causally linked to Reaves's protected activity is Reaves's ultimate termination.[3]

The court is fully cognizant of the appearance of temporal proximity between Reaves's complaints and his ultimate termination on October 4, 2007. As noted, Reaves's

---

[2] Race was never explicitly included in any formal complaint to PSP personnel, but a jury could reasonably find that Reaves implicitly complained of racial discrimination. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-702 (3d Cir. 1995) (holding that, to constitute protected conduct under Title VII, a complaint of unfair treatment must "explicitly or implicitly allege" that the unfair treatment stemmed from the plaintiff's membership in a protected class).

[3] Reaves vaguely alleges that his supervisors' "unwarranted investigations" and recommendations for dismissal constitute adverse employment actions which are separate and distinct from Reaves's ultimate termination. (See Doc. 80 at 9 n.2). However, Reaves fails to delineate any legal basis for this assertion and fails to produce any direct or circumstantial evidence linking the investigations to his complaints as opposed to the conduct underlying the extension of his probation. Moreover, Reaves's causation arguments consistently refer to his termination as the only adverse employment action in question. (See Doc. 30 at 2-3, 18-24; Doc. 47 at 3-4, 34-36; Doc. 80 at 9, 12-15). See Troy v. State Corr. Inst., Civ. A. No. 11-1509, 2013 WL 5511265, at *12 n.6 (W.D. Pa. Oct. 4, 2013) ("It is not proper for the Court to scour the record to determine whether any other circumstance constituted an actionable adverse employment action."). Consequently, the court will consider the causation element only as it relates to the adverse employment action represented by Reaves's termination.

calls to the EEO office took place between March and October, 2007. (Doc. 20 ¶ 116; Doc. 29 ¶ 116). Reaves spoke with Cpl. Ranck in July, 2007 about his belief that he was being treated differently than others. (Doc. 20 ¶ 112; Doc. 29 ¶ 112). He also discussed his concerns with Lt. Sneed and sent Lt. Sneed a letter chronicling his complaints sometime in September, 2007. (Doc. 20 ¶¶ 125-27; Doc. 29 ¶¶ 125-27).

Nevertheless, in the case *sub judice*, the temporal proximity between Reaves's complaints and his ultimate termination is not unusually suggestive of a retaliatory motive. Reaves's extended probationary period was scheduled to expire in October. (See Doc. 21-10, Ex. JJ; Doc. 20 ¶ 86; Doc. 29 ¶ 86). At that time, PSP was compelled to make a decision concerning whether to retain Reaves, further extend his probationary period, or terminate him. (See Doc. 21-2, Ex. B, § 2.09(A)). With the expiration of Reaves's *extended* probationary period imminent, it is indisputable that PSP was required to take action on Reaves's employment status, regardless of whether Reaves engaged in protected activity. See Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir. 2001) ("temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'" (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (internal citations omitted)); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) ("[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) *abrogated on other grounds by* Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006))). The

court concludes that the temporal proximity between Reaves's complaints and his ultimate termination does not *ex proprio vigore* suggest a retaliatory motive on behalf of PSP.

Reaves alleges that he was the subject of ongoing antagonism from the time of his initial complaints until his termination. Specifically, Reaves claims he was the subject of "unwarranted investigations," such as the extended investigation of three off-duty traffic stops involving Reaves, the offline search of Reaves' vehicle registration to identify any other traffic stops, and the questioning of various PSP employees concerning whether Reaves was stopped in New Jersey for "pulling wheelies" on his motorcycle.[4] (Doc. 80 at 11).

It is hardly a controversial proposition to state that probationary troopers are subject to greater scrutiny and supervision than retained troopers.[5] (Doc. 20 ¶¶ 5-7, 10; Doc. 29 ¶¶ 5-7, 10). The purpose of the Probationary Trooper Program is to enable PSP to conduct a "more comprehensive and in-depth evaluation" of probationary troopers. (Doc. 20 ¶ 6; Doc. 29 ¶ 6). Probationary troopers are evaluated based on a number of

---

[4] Reaves also claims that Cpl. Ranck was instructed "to find any fault with Plaintiff and to solicit complaints against Plaintiff." (Doc. 80 at 11). This assertion is wholly unsupported by the record.

[5] Reaves denies PSP's statement that probationary troopers are held to different standards than troopers who are not on probation. (Doc. 20 ¶ 10; Doc. 29 ¶ 10). In support, Reaves merely cites to record evidence indicating that a cadet is promoted to the trooper position immediately upon graduation from the State Police Academy and that the job description and pay for a cadet is different than that for a trooper. (See Doc. 29 ¶¶ 5,6). These facts do not create a genuine dispute concerning the standard of scrutiny applied to a probationary trooper.

different areas, including application of job knowledge; general attitude and behavior; preparation of reports and correspondence; productivity; dependability, responsibility, and reliability; verbal communication skills; logical reasoning and judgment; listening comprehension and attentiveness; planning and organizing ability; objectivity, open-mindedness, and impartiality; sensitivity and tact; poise, self-control, and calmness; neat and appropriate personal appearance; honesty and integrity; and basic police skills. (Doc. 20 ¶ 7; Doc. 29 ¶ 7).  Probationary troopers are primarily evaluated through the use of GI reports, which are intended to be detailed performance inquiries.  (Doc. 20 ¶¶ 9-11; Doc. 29 ¶¶ 9-11).  Indeed, Cpl. Ranck was required to prepare a supplemental GI report due to Reaves's probation extension.  (See Doc. 21-2, Ex. B; Doc. 20 ¶ 86; Doc. 29 ¶ 86). The record is devoid of any support for Reaves's claim that PSP's expansive investigation into his background is "antagonism" as opposed to a comprehensive evaluation entirely consistent with PSP's probationary trooper policy.

Reaves also argues that PSP officials did not investigate other probationary troopers with the same scrutiny.[6]  However, there is no record evidence of any other probationary troopers with similar conduct issues which would implicate similar or perhaps greater scrutiny.  (See Doc. 51 at 11-12).  When supervisors extended Reaves's probationary period, human resources policy mandated the preparation of supplemental

---

[6] Reaves alleges that "Ranck and Sneed themselves admit not reviewing anyone else with the same scrutiny they applied to Reaves." (Doc. 30 at 19). Reaves cites to testimony taken out of context. (See, e.g., Doc. 29-47 at 21, 45). Viewed in context, Cpl. Ranck and Lt. Sneed merely acknowledged that their investigation of Reaves was unique as a direct result of Reaves's unique conduct while on probation, but made no admission that their investigation was somehow excessive or unwarranted.

GI reports. (See Doc. 21-2, Ex. B; Doc. 20 ¶ 86; Doc. 29 ¶ 86). Moreover, the investigations that Reaves identifies as "antagonism" were initiated *after* Reaves informed Cpl. Ranck that Reaves was pulled over by Embreeville troopers; specifically, Cpl. Ranck learned that Reaves "blew past" a state police car, passing on the *right* side of the troopers' vehicle. (Doc. 20 ¶ 76-80, 88; Doc. 29 ¶ 76-80, 88). On July 26, 2007, Cpl. Ranck became aware of an earlier incident involving Sergeant Kissinger ("Sgt. Kissinger"), a local police officer. (Doc. 20 ¶ 87; Doc. 29 ¶ 87). According to Sgt. Kissinger, on November 28, 2006, Reaves insisted that Sgt. Kissinger arrest Reaves's neighbor, who had been placing notes on vehicles that were parked in front of the neighbor's residence.[7] (Doc. 20 ¶ 89; Doc. 29 ¶ 89). Sgt. Kissinger described Reaves's demeanor and behavior as "nasty, demanding and very arrogant." (Id.) Reaves does not provide any evidence that PSP failed to investigate probationary troopers with similar instances of misconduct who had already had their probation extended.

    PSP's reasons for Reaves's termination are entirely consistent with its reasons for Reaves's probation extension, which predated Reaves's allegedly protected activity. See Verma v. Univ. of Pennsylvania, Civ. A. No. 12-2799, 2013 WL 4010237 (3d Cir. Aug. 7, 2013) ("[T]his court has declined to infer . . . a causal link where an employee's negative performance evaluations predated any protected activity."). PSP extended Reaves's probationary period in March, 2007. In Cpl. Ranck's January 23, 2007 GI report, several

---

[7] Reaves disputes that "the Kissinger incident was fairly and accurately reported in any way to support a legitimate, non-discriminatory, or non-retaliatory reason to support Mr. Reaves' termination." (Doc. 29 ¶ 89). Reaves does not cite to any record evidence to support this assertion.

supervisors voiced concerns regarding errors in Reaves's reports and Reaves's attitude and lack of respect towards co-workers. (See Doc. 21-9, Ex. X). Cpl. Ranck also cited two off-duty traffic violations involving Reaves. (Id.) Ultimately, most of Reaves's supervisors recommended his retention, with some pointedly qualifying that "with time and more experience," Reaves would make a good trooper. (Id.) However, Corporal Brandon Daniels did not recommend Reaves's retention, explaining that Reaves is "aggressive," "argumentative," "abrasive," and "lacks empathy." (Id.) Both Cpl. Ranck and Lt. Sneed recommended Reaves's retention, but Capt. Laufer recommended an extension of his probationary period as a result of the issues delineated in Cpl. Ranck's GI report. (See Doc. 21-9, Ex. Z; Doc. 20 ¶ 58; Doc. 29 ¶ 58). The PTRP also recommended further review on March 14, 2007, citing Reaves's supervisors' concerns with Reaves's reports, attitude, and off-duty traffic violations. (See Doc. 21-9, Ex. AA; Doc. 20 ¶ 60; Doc. 29 ¶ 60). PTARP confirmed this recommendation. (See Doc. 21-9, Ex. CC; Doc. 20 ¶¶ 61-62; Doc. 29 ¶¶ 61-62).

The proffered reasons for Reaves's termination in October, 2007, are virtually identical to the concerns discussed in relation to his initial probation extension. As discussed *supra*, Cpl. Ranck's August 17, 2007, GI report chronicled Reaves's off-duty traffic stop in Embreeville in July 2007 as well as the incident with Sgt. Kissinger. (See Doc. 21-10, Ex. JJ). Several supervisors also noted a decline in the quality of Reaves's written reports, as well as issues with Reaves's attitude. (Id. at 3-5). Lt. Sneed expressed his concern with Reaves's attitude in Lt. Sneed's supplemental report recommending dismissal. (See Doc. 21-11, Ex. MM; Doc. 20 ¶ 95; Doc. 29 ¶ 95). Several supplemental GI

14

reports provide additional information regarding Reaves's infelicitous off-duty traffic stops. (See Doc. 21-11, Exs. NN, OO, PP; Doc. 20 ¶ 96-101; Doc. 29 ¶ 96-101). One supplemental report addressed Cpl. Ranck's efforts to investigate rumors that Reaves had been stopped in New Jersey for pulling "wheelies" on his motorcycle. This report included summaries of six interviews with Reaves's co-workers. (See Doc. 21-11, Ex. OO; Doc. 20 ¶ 96; Doc. 29 ¶ 96). Reaves's co-workers raised concerns with his "arrogant" attitude, and one raised concerns about the legality of Reaves's conduct during a traffic stop. (Id.) Capt. Laufer and Major McDaniel both recommended Reaves's termination, citing Reaves's continuing attitudinal issues and questionable conformance to the law while off-duty. (See Doc. 21-11, Exs. QQ, RR; Doc. 20 ¶ 104-106; Doc. 29 ¶ 104-106). Indeed, Capt. Laufer explained that he viewed Reaves's behavior "as a pattern of conduct" throughout his probationary period. (Id.) Similarly, the PTARP explained that "[d]espite his probationary period being extended, [Reaves] continues to display a disregard for PA law, engaged in unprofessional conduct, and placed the Pennsylvania State Police in jeopardy or damage to its image and potential civil liability." (See Doc. 21-11, Ex. TT; Doc. 20 ¶ 108; Doc. 29 ¶ 108). The reasons for PSP's employment actions – attitudinal issues, off-duty traffic incidents, and errors in reports – were consistent before and after Reaves's complaints. Reaves cannot establish a *prima facie* case of retaliation because the proffered evidence, examined in its entirety, does not raise an inference that

his complaints were the but-for cause of his termination.[8]  Thus, it is not necessary for the court to proceed to the next two stages of the McDonnell test.  Based on the court's review of the totality of the evidence, there is no genuine dispute of material fact and PSP is entitled to judgment as a matter of law on Reaves's retaliation claim.

---

[8] Reaves also cites to Cpl. Ranck's sixth performance evaluation as evidence of but-for causation.  This particular evaluation assesses Reaves's general attitude and behavior as "unsatisfactory."  (See Doc. 29-19, Ex. 19; Doc. 20 ¶ 111; Doc. 29 ¶ 111).  It states, in part, that "Trooper Reaves has also recently displayed a negative attitude towards the Department.  He has advised me that he feels that there is a double standard used regarding him and that he gets BPR's for his actions and other Troopers get nothing for the same thing or worse."  (Id.)  The court observes that Cpl. Ranck signed this evaluation *after* PSP made the final decision to terminate plaintiff.  (Id.)  Although he does not directly argue the point, Reaves inferentially suggests that Cpl. Ranck's coupling of Reaves's negative attitude and protected activity reflects retaliatory motive, and that this retaliatory motive influenced the breadth of Cpl. Ranck's investigation against Reaves, the results of which, in turn, influenced multiple PSP officials – who had no knowledge of Reaves's complaints – in their decision to terminate Reaves.  See Staub v. Proctor Hospital, 131 S.Ct. 1186, 1194 (2011) (holding that an employer may still be liable for retaliation if the employer's decision to undertake an adverse employment action was proximately caused by a supervisor's retaliatory animus);  McKenna v. City of Philadelphia, 649 F.3d 171 (3d Cir. 2011) (same).  Standing alone, this set of logical leaps is nothing short of conjecture, and it is simply too attenuated for Reaves to establish a *prima facie* case of retaliation.

**IV.** **Conclusion**

For the foregoing reasons, the court will grant PSP's motion (Doc. 74) for reconsideration, and amend its previous order (Doc. 51) to grant summary judgment to PSP on both of Reaves's claims. An appropriate order follows.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 6, 2014